# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re:  Petition for Appointment     :
of Constable                       :   No. 1485 C.D. 2015
                                        :   Submitted: June 6, 2016
Appeal of: Exel Zamora           :

BEFORE:   HONORABLE ROBERT SIMPSON, Judge
                 HONORABLE PATRICIA A. McCULLOUGH, Judge
                 HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION NOT REPORTED

**MEMORANDUM OPINION**
**BY JUDGE SIMPSON**              **FILED: July 6, 2016**

In this appeal, Exel Zamora (Zamora) asks whether the Court of Common Pleas of Monroe County[1] (trial court) erred in denying his petition for appointment as a second constable for Pocono Township (Township).  Zamora asserts the trial court erred in determining no vacancy existed for a second constable position.  Upon review, we affirm.

## I. Background

In December 2014, Zamora, representing himself, filed a petition for appointment as a constable for the Township and attached a petition purportedly signed by 10 qualified electors.  Thereafter, the trial court dismissed the petition without prejudice to Zamora's right to refile a petition that properly pled a vacancy in the position of constable because current election records showed the position was filled by a duly elected constable.

---

[1] The Honorable David J. Williamson presided.

In May 2015, Zamora refiled his petition. In turn, the trial court issued an order scheduling a hearing on the petition in which it stated that, prior to addressing the substance of the petition, it would receive evidence and argument as to whether a vacancy existed in the office of constable in the Township in accordance with 44 Pa. C.S. §§7114 and 7121. The trial court's order also directed the Monroe County District Attorney (District Attorney) to perform a background check on Zamora, including, at a minimum, a criminal history check and an evaluation of Zamora's qualifications and suitability for the office of constable in accordance with 44 Pa. C.S. §7121.

In addition, the trial court directed Zamora to serve copies of his petition and the trial court's order on the District Attorney, Magisterial District Judge Thomas E. Olsen, Pocono Township and Peter Gallagher (Gallagher), Pocono Township Constable. The trial court's order also indicated that any objections to the petition and any submissions addressing the legal issue of whether a vacancy currently existed were required to be filed and served at least five business days before the hearing. The trial court then held a hearing on the petition in July 2015 at which only Gallagher and Zamora appeared and testified.

After the hearing, the trial court issued an order denying Zamora's petition for appointment as a constable of the Township under 44 Pa. C.S. §7121 based on lack of proof of a vacancy. The trial court noted, pursuant to 44 Pa. C.S. §7114(a)(2), "[t]he qualified electors of each township of the first class <u>may</u> vote for and elect a properly qualified person to serve as constable, in addition to the constable elected under paragraph (1)." <u>Id.</u> (emphasis added). The trial court

2

stated there was insufficient testimony here to show: (1) the Township elected to place a second constable position on the most recent ballot; and, (2) a vacancy in a constable position currently exists.

Zamora, now through counsel, appealed to this Court. The trial court directed him to file a concise statement of the errors complained of on appeal pursuant to Pa. R.A.P. 1925(b), which he did.

Thereafter, the trial court issued an opinion pursuant to Pa. R.A.P. 1925(a) in which it observed that in his Pa. R.A.P. 1925(b) Statement, Zamora asserted the trial court erred in: (1) determining the Township had to initially conduct an election for a second constable position in order for a vacancy to exist; and, (2) denying the petition where it was unopposed and met all procedural requirements.

At the outset of its opinion, the trial court explained, the Township is presently a first class township. To that end, the trial court heard testimony and took judicial notice that the Township became a first class township after a vote by its residents. The trial court appointed the first board of commissioners to begin serving in 2013. Prior to that time, the Township was a second class township. The trial court stated second class townships are permitted one elected constable; however, first class townships may have two elected constables. See 44 Pa. C.S. §7114(a)(2).

3

At the hearing, Gallagher, the elected constable of the Township, testified he has been an elected constable in the Township since 2001, and he was most recently reelected in 2013, the first election after voters opted to make the Township a first class township. Prior to Gallagher's election in 2013, the Township was a second class township, which permitted only one constable. The 2013 ballot for constable in the Township only had one constable position for election, even though the Township was a first class township and could have opted for two constables. Gallagher testified the board of elections only placed one constable position on the ballot because the board's interpretation of the statute was that the Township *may* (not *shall*) elect a second constable. Gallagher testified the Township decided not to elect a second constable. Gallagher stated that, had there been a second constable position on the ballot, his own deputy constable would have run for it, as he was already needed for coverage in the Township. The trial court found Gallagher's testimony credible and convincing.

For his part, Zamora also testified a second constable position was not on the ballot in the Township at the most recent election. Zamora did not have any other information about the Township's position on the matter. Zamora's view was that a vacancy existed as to a second constable position in the Township, even though the position was not on the most recent ballot and there was never a second constable position filled in the Township. Zamora believed the second constable position existed immediately upon the Township becoming a first class township, and as that position was not filled (whether on the recent ballot or not), a "vacancy" existed within the meaning of the statute.

The trial court explained that its reading of 44 Pa. C.S. §7114(a)(2) led it to conclude a township of the first class has discretion to determine whether a second constable position will exist and appear on the ballot for election. The trial court indicated the operative language of the provision states that each first class township *may* vote for and elect a second constable. As such, a township has discretion whether to place the matter on the ballot, which effectively creates the position. The trial court observed there was no specific language in the statute that the second position was created automatically, with or without an election.

The trial court further explained the evidence here showed the Township did not place a second constable position on the 2013 ballot. Further, a second constable never served in the Township. The trial court stated there was no evidence a vacancy existed in a second constable position and no evidence such a position was ever created in the Township.

In addition, the trial court stated there was no legislative authority regarding the number of constables or election of constables or creation of a second constable position in first class townships other than that set forth in 44 Pa. C.S. §7114. The trial court deemed itself bound by the language of that statutory provision, and it found no other guidance.

The trial court noted Zamora's argument that his petition was unopposed. However, it stated, that fact did not necessitate a finding that was contrary to law. In any event, the trial court found Zamora's petition *was* opposed by Gallagher, who noted that if there was a second position on the ballot, his

5

deputy would have run for it. The trial court disagreed that Zamora's petition was procedurally correct as there was no second position created by an election for which there was a vacancy.

In sum, the trial court determined a vacancy in the position of a second constable did not exist immediately upon the Township becoming a first class township. Rather, a vacancy exists when an actual constable position no longer has someone serving in that position. Because it found 44 Pa. C.S. §7114(a)(2) gave a first class township *discretion* to create a second constable position by placing it on the ballot, and there was no evidence the Township did so, there was no position for which Zamora could claim a vacancy. For these reasons, the trial court denied Zamora's petition. This matter is now before us for disposition.

## II. Issue

On appeal, Zamora argues the trial court erred in determining it was initially necessary that the Township conduct an election for a second constable position prior to recognizing Zamora's petition to be appointed as a second constable in the Township because a vacancy existed from the moment the Township became a first class township.[2]

---

[2] No brief in opposition to Zamora's appeal was filed. To that end, although the docket sheet lists the appellee as the Township c/o the Monroe County District Attorney, this Court received no entry of appearance or any other document from the appellee. As a result, this Court entered an order precluding the Township c/o the Monroe County District Attorney from filing a brief or participating in oral argument.

# III. Discussion
## A. Contentions

Zamora contends the initial issue here, which essentially prevented the appointment of a second constable in the Township, centers on a misinterpretation of 44 Pa. C.S. §7114. He argues that what the trial court misapprehended is that when the electors of a second class township vote to convert a township to a first class township, certain changes in the structure and offices in the township occur. One of these is the *automatic* creation of a second constable position.

Zamora maintains some of the confusion regarding the second constable position is based on the erroneous assumption that the Township, through its governing body or otherwise, must take some further action to "start-up" the second constable position, *i.e.*, petition the board of elections to place the new constable position on the ballot. Zamora argues this is not the case, but rather the second constable position exists as of the effective date of the Township's change in classification.

Zamora further asserts the archaic language found in 44 Pa. C.S. §7114 relates back to the prior version of the statute that was first adopted around 1911. At that time, Zamora argues, the concept of having a second constable in a larger, more sophisticated first class township was a new concept. Thus, the General Assembly's language can easily be construed to be saying, "you townships, by voting to become one of these new 1st class townships, have a right to elect a 2nd constable!" Appellant's Am. Br. at 8.

7

Zamora contends there are numerous instances where a second class township voted to become a first class township where either an election took place after the conversion or someone was initially appointed to fill the new constable position and thereafter the second position would come up automatically at least every six years to be filled by election.

Zamora maintains the trial court abused its discretion or committed an error of law in determining it was initially necessary that the Township conduct an election for a second constable before recognizing Zamora's petition to be appointed a second constable as a vacancy existed from the moment the Township became a first class township. He asserts the trial court cited no case law in support of its decision.

Zamora argues there are several reasons why the trial court's interpretation of 44 Pa. C.S. §7114 was in error. First, if this statutory provision is interpreted to mean that an individual can only become a constable by way of election, many constable positions would never be filled or, alternatively, would remain vacant for a considerable period.

Second, in the factual scenario here, the Township, following a voter referendum, elected to change its status from a second class to a first class township. As a result of this elector-approved change, many new processes and positions were changed. The existence of a second constable position may not have been one of the noted, enumerated benefits, but it is clearly permitted under 44 Pa. C.S. §7114.

Zamora argues, although not expressly stated, it would appear the Township or the board of elections is fearful of having another constable appointed in the Township per some "necessity" standard. However, he asserts, what these entities should realize is, as noted by this Court in In re Fry, 110 A.3d 1103, 1108-09 (Pa. Cmwlth 2014) (en banc):

> [C]onstables … are not salaried public employees, but instead are paid 'by the piece' for each warrant served or other service performed at the direction of a magisterial district judge. Thus the cost to the public for constable services is measured by the number of services to be performed, not by the number of constables available to perform them.

As such, Zamora contends his appointment would not add any costs to the Township budget.

In addition, Zamora points out, the statutory provision at issue dates back to the original Pennsylvania constable law in 1911. The addition of this provision for a second constable when a township moves up in class based on population and a need to provide more services, had the General Assembly thinking the new township officials could place this second position on the ballot immediately, just like they could make provisions for other elected position changes in the new first class township. Section 208 of the First Class Township Code[3] provided for many new positions based on need by moving to first class status and the need for additional constable services could well be such a need.

---

[3] Act of June 24, 1931, P.L. 1206, as amended, 53 P.S. §55208.

9

Finally, Zamora maintains many new first class townships were created in the Commonwealth in the last several decades, particularly in eastern Pennsylvania where counties such as Lehigh, Northampton and Monroe, saw a major influx of people moving in from New York and New Jersey. With this growth, many townships saw new large tract housing developments that brought with them the need for new services, including additional constable services.

## B. Analysis

The issue presented poses a question of statutory construction, to which our review is plenary. Snizaski v. Workers' Comp. Appeal Bd. (Rox Coal Co.), 891 A.2d 1267 (Pa. 2006). The object of statutory construction is to ascertain and effectuate legislative intent. 1 Pa. C.S. §1921(a). In pursuing that end, we are mindful that a statute's plain language generally provides the best indication of legislative intent. Bd. of Revision of Taxes, City of Phila. v. City of Phila., 4 A.3d 610 (Pa. 2010). Thus, statutory construction begins with examination of the text itself. Se. Pa. Transp. Auth. v. Holmes, 835 A.2d 851 (Pa. Cmwlth. 2003).

When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit. 1 Pa. C.S. §1921(b). It is only when the words of the statute are not explicit on the point at issue that resort to statutory construction is appropriate. Commonwealth v. Fedorek, 946 A.2d 93 (Pa. 2008). In reading the plain language of a statute, "[w]ords and phrases shall be construed according to rules of grammar and according to their common and approved usage." 1 Pa. C.S. §1903(a). Further,

10

every statute shall be construed, if possible, to give effect to all its provisions so that no provision is "mere surplusage." 1 Pa. C.S. §1921(a).

Moreover, although we must "listen attentively to what a statute says[;][o]ne must also listen attentively to what it does not say." Kmonk-Sullivan v. State Farm Mut. Auto. Ins. Co., 788 A.2d 955, 962 (Pa. 2001). We may not insert a word the legislature failed to supply into a statute. Girgis v. Bd. of Physical Therapy, 859 A.2d 852 (Pa. Cmwlth. 2004).

At issue here is the interpretation of 44 Pa. C.S. §7114(a) (entitled, "Townships"), which states, in pertinent part (with emphasis added):

**(a) Election.--**The following shall apply:

(1) The qualified voters of every township <u>shall</u> vote for and elect a properly qualified person for constable.

(2) The qualified electors of each township of the first class <u>may</u> vote for and elect a properly qualified person to serve as constable, in addition to the constable elected under paragraph (1).

Further, 44 Pa. C.S. §7121 (entitled, "Constables") states, as pertinent:

When a vacancy occurs in the office of constable, regardless of the reason for the vacancy, the court of common pleas of the county of the vacancy, upon petition of not less than ten qualified electors residing in the … township of the vacancy, shall appoint a suitable person, who, upon being qualified as required by law, shall serve as the constable for the unexpired term of the vacancy.

11

Here, the plain language of clause (1) of 44 Pa. C.S. §7114(a) states that the qualified voters of every township *shall* vote for and elect a properly qualified person for constable   The plain language of clause (2) of 44 Pa. C.S. §7114(a) states that the qualified electors of each first class township *may* vote for and elect a second properly qualified person to serve as constable.  Generally, the word "may" confers discretion, while the word "shall" imposes a non-discretionary duty.  Jennison Family Ltd. P'ship v. Montour Sch. Dist., 802 A.2d 1257 (Pa. Cmwlth. 2002) (citing Zimmerman v. O'Bannon, 442 A.2d 674 (Pa. 1982)); see also Volynsky v. Clinton, 778 F. Supp.2d 545, 554 (E.D. Pa. 2011) (citations omitted).  Thus, "the word 'may' in a statute will not be construed to mean 'shall' unless the context or subject matter compels such construction or unless it is unnecessary to give effect to the clear policy and intention of the Legislature[.]"  In re Columbia Borough, 354 A.2d 277, 279 (Pa. Cmwlth. 1976) (citation omitted).

Because the Legislature used both the words "shall" and "may" within the same subsection, it is clear that the first clause was intended to be compulsory and mandatory, while the second clause was intended to be permissive and discretionary rather than compulsory or mandatory.  Id. (where statutory provision utilized "shall" and "may" in same sentence, this Court agreed with common pleas court that former was compulsory or mandatory while latter was discretionary or permissive); see also Jennison Family Ltd. P'ship, 802 A.2d at 1262 (quoting MacDonald, Illig, Jones & Britton v. Erie Cnty. Bd. of Assessment Appeals, 604 A.2d 306, 311 n.4 (Pa. Cmwlth. 1992) ("where … both 'shall' and 'may' are used in the same statute, 'it is a fair inference that the legislature realized the difference in meaning, and intended that the verbs used should carry with them their ordinary

12

meanings.'")). Thus, while the Legislature mandated that *every* township elect *one* constable, it afforded first class townships *discretion* to elect a second constable.

Our review of the brief transcript before the trial court here reveals that the Township residents voted to make the Township a first class township in 2013, but the Township did not yet choose to elect a second constable. Tr. Ct. Hr'g, Notes of Testimony, 7/6/15, at 4-6. Thus, "[t]he evidence showed the Township did not place a second constable position on the 2013 ballot. Furthermore, there has never been a second constable serving in the Township." Tr. Ct., Slip Op., 9/2/15, at 3. As a result, there was no evidence that the Township opted to elect a second constable and no evidence a vacancy existed in a second constable position. Given that the Township did not yet exercise its discretion to elect a second constable, no error is apparent in the trial court's determination that no vacancy existed for which the trial court could appoint Zamora as a second constable for the Township.

Indeed, although undefined in the statute at issue here, the plain meaning of the term "vacancy" is "a vacant office [or] post" or "a vacating of an office [or] post[.]" MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 1299 (10th ed. 2001). Because the Township did not opt to elect a second constable here, no vacancy existed for Zamora to fill.

Moreover, although Zamora argues a second constable position was *automatically* created when the Township became a first class township, this argument is not supported by the plain language of 44 Pa. C.S. §7114(a)(2), which

13

vests first class townships with *discretion* to elect a second constable. As the trial court observed, "[t]here is no specific language that the second position is created automatically, with or without an election." Tr. Ct., Slip Op., at 3.

In addition, although Zamora references the fact that certain changes to the offices of the Township occurred when it became a first class township, the position of constable is *not* a township office. When a new first class township is created, the court of common pleas "shall appoint five commissioners, and the other elective officers to which the township is entitled …." Section 225 of the First Class Township Code, 53 P.S. §55225. In turn, the elected officers of a first class township are township commissioners, a township tax collector and three elected auditors or an appointed auditor, or a controller where such office is established. Section 503 of the First Class Township Code, 53 P.S. §55503. Thus, as our Supreme Court stated: "A constable is an elected official authorized to appoint deputy constables. <u>A constable is an independent contractor and is not an employee of</u> the Commonwealth, the judiciary, <u>the township</u>, or the county <u>in which he works</u>." <u>In re Act 147 of 1990</u>, 598 A.2d 985, 986 (Pa. 1991) (emphasis added) (citation omitted); <u>see</u> <u>also</u> <u>Ward v. Dep't of Transp., Bureau of Motor Vehicles</u>, 65 A.3d 1078 (Pa. Cmwlth. 2013).

In sum, as the trial court stated (with emphasis added):

> Our reading of 44 Pa. [C.S.] §7114 (a)(2), leads us to conclude that a township of the first class has the discretion to determine whether or not a second constable position will exist and appear on the ballot for election. The operative language of the statute states each township of the first class *may* vote for and elect a second constable. As such, it is discretionary with a township whether or not to place the matter on the ballot, which

14

effectively creates the position. There is no specific language that the second position is created automatically, with or without an election.

The evidence showed the Township did not place a second constable position on the 2013 ballot. Furthermore, there has never been a second constable serving in the Township. There was no evidence a vacancy existed in a second constable position, and no evidence such a position was ever created in the Township.

There is no legislative authority regarding the number of constables, or election thereof, or creation of the second constable position in townships of the first class other than in 44 Pa. [C.S.] §7114. We are bound by the language of that statute and find no other guidance in the matter. …

We find that a vacancy in the position of a second constable did not exist immediately upon [the] Township becoming a first class township. Rather, a vacancy exists when an actual constable position no longer has someone serving in that position. As we find the enabling statute of 44 Pa. [C.S.] §7114 (a)(2) gives a first class township the discretion to create a second constable position by placing it on the ballot, and there was no evidence [the] Township did so, then there was no position for which Zamora, or anyone else, may claim a vacancy.

Tr. Ct., Slip Op., at 4 (emphasis in original).[4]

---

[4] Zamora offers incomplete citations to In re Petition for Appointment of Price, Lehigh County Dkt. No. 0124-M/1992 (South Whitehall Township) and In re Petition for Appointment of Miller, Lehigh County Dkt. No. 2215-M12004 (Salisbury Township), in which he asserts appointments were made to fill newly created constable positions. See also In re 11th Ward Constable, Allentown, 7 Northampton Reporter 187 (1900). However, despite a passing reference to these matters (that does not include citations that allow us to locate any orders or opinions), Zamora provides no explanation concerning the factual details of those matters or how they support his position here.

Based on the foregoing, we affirm.[5]



ROBERT SIMPSON, Judge

---

[5] Zamora also contends the trial court erred in denying his petition for appointment when no one opposed his petition, and he met all the qualifications to be appointed to fill the existing vacancy for the second constable position. Because we agree with the trial court that no vacancy in a second constable position exists here, we need not address this issue.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re: Petition for Appointment   :
of Constable                     :   No. 1485 C.D. 2015
                                   :
Appeal of: Exel Zamora     :

## O R D E R

**AND NOW**, this 6th day of July, 2016, the order of the Court of Common Pleas of Monroe County is **AFFIRMED**.


---

ROBERT SIMPSON, Judge